We will hear argument next in the case of Alcorn v. Chicago. Mr. Peaches. Good morning and may it please the court, my name is Donald Peckis, I'm here on behalf of the plaintiff appellant Lisa Alcorn. Purposeless detention and detention based on falsehoods are unreasonable and violate the Fourth Amendment. Tyler Luminar was enduring mental anguish at the very time that he attempted suicide and it was at the very time his rights were being violated by the defendants. So Mr. Peckis, one thing that troubles me about this case, I know you are trying to steer clear of making the mistake that various requirements under state law automatically carry over to the Fourteenth Amendment or other federal law theories, but it seems to me that if the state of Illinois just wanted to have everybody show up for a bond hearing, and whether the issuing court was in Cook County or whether it was in some other county, the state could do that. I mean, maybe it's a certain amount of time, but it's a procedural protection. And I'm having so much trouble finding the actual policies that the chief judge of the Circuit Court of Cook County and then implemented by the police had saying, well, if it's an out-of-county thing, we need this extra step. I don't know what in the federal Constitution says you can't do that, even though maybe in your case it would have been superfluous, but there are many cases out there. This is a huge system and I don't understand why this is such a problem. I do understand that there's a difference between what the state statute says and what these policies do, since the state statute makes this appearance waivable, whereas they've chosen not to. But again, where's the federal constitutional dimension? No matter what, it's a purposeless detention. But why is it purposeless? It's an extra safeguard, which may not be necessary in a lot of cases. The system's working fine. But when it's out-of-county, there may be extra paperwork that's unfamiliar. There may be other reasons to do it that way. It makes perfect sense when you think about it. So in the state statute, there is a provision where the criminal defendant can waive the appearance. It makes sense in a big state, because I'm in Lake County, I get stopped for a traffic ticket. The police officer says, oh, there's a warrant for your arrest, Alexander County, Illinois. I've never been, where is that, Metropolis, 350 miles away. I've never been there, I just moved here from Wisconsin. Okay, well, you can go to a judge here, you can go to the Waukegan Courthouse, and maybe we can get it sorted out, or you can waive it and you go right down to Metropolis. I want to see a judge here. So that makes sense in terms of protecting due process rights of the individual. Here that was not an issue. He never said it wasn't him. The only thing he said was, I thought I paid that fine. He never said it wasn't him. He had the money in his pocket, he wanted to pay it, he had more than enough money, and he wanted to go home. So anything, everything was, once the administrative processing was completed, everything was purposeless. All the detention after that was purposeless. See, I just have trouble thinking of that. It's actually a little unusual to see people arguing that there's too much process being offered as opposed to not enough. It is, but it was his right whether he wanted to see a judge in the county where he was arrested. Why is it his right? Again, if the state of Illinois had just had a rule that said you always have to be taken in for the bond hearing, we don't care what county you're arrested in, same county, different county, we would be in exactly the same position as we are for your client, and I can't fathom that that would be a 14th Amendment violation. I really think that's the counter of my argument, and that would be an argument that you are not, I would be asking, if I was on the other side of that, I would be asking for this court to enforce state law. I'm not. This is a federal, a violation of the Fourth Amendment, a purposeless detention. Let me ask Judge Wood's question in a different way, though I think it's one that will surprise you. Are you asking us to overrule Gordon against Dagelman? I ask that question because this court already has an opinion saying that Judge Wood's question is the right way to look at the Fourth Amendment issue, that we have to ask whether if the state wanted the defendants to proceed exactly the way they did proceed, whether that would violate federal constitutional law. That's the holding of Gordon, and your argument is, well, inconsistent with Gordon, but I didn't see any citation or any request to overrule it. No, we did not cite that, but I still, I don't, this is not the, we're not asking for the enforcement and the general administrative order that was the impetus for this policy. That's not the, it's not the law. Well, I. Whether it's the law in Illinois is, of course, not relevant. That's the holding of Virginia against Moore, which her brief acknowledges. So Gordon is about the question, how do you separate state law claims from federal law claims? And it says that the way to do that is to assume that as a matter of state law, the defendants acted exactly as they did, and then ask whether that violates the federal constitution. Your argument, by contrast, is the position rejected in Gordon. It is, let's assume they're not entitled to act as they did, say that because they are not so entitled, their behavior was unreasonable, and since it was unreasonable, it violates the Fourth Amendment. What Gordon said is that that's equivalent to enforcing state law. They were, now, we can overrule it, but you haven't even acknowledged the existence of that decision. The police were not enforcing state law. They were implementing an express order. Well, the chief judge of the Circuit Court of Cook County, Judge Evans, had issued this clear state law issue, whether the state statute was creating a floor, allowing counties to go beyond that, or whether it was to be taken as a floor and a ceiling, whatever, we don't know. But that's not our issue. He certainly did have an order in place, and the Chicago police were absolutely complying. The sheriffs, everybody was complying with that order when Mr. Lumar was brought over for his bond hearing. And of course, in some ways, this is all an attenuated argument anyway, because that's not the gist of his complaint. The gist of his complaint is, because A happened, then B happened, then C happened, because he gets over there, there's this video with all these people milling around in this bag that turns out to have cocaine in it, which is why he isn't just bonded out. That's what he was... If that had happened, we probably wouldn't be here. But instead, there's this additional fact, I would say almost an intervening cause, where the cocaine is found, so he has to be sent back to the police department to be processed on that, and that's where things, of course, become very unfortunate. Well, I have to move on to the cocaine issue. Okay, that would be great. Because he was there, he should have been allowed to bond out, but now he gets to the jail and Wlodarski, the deputy, makes these false statements. His original report, he sees Lumar reaching behind the bench, he takes Lumar's hand, sees Lumar drop the baggie, he recovers the baggie. Almost three years later, at a deposition, the story materially changes, materially. He's looking at Lumar when he sees Lumar pick something up. He takes Lumar's hand and it's empty, he says his hand was on his lap, and he gets the baggie off the ground. The only thing consistent between those two versions are that the baggie was found on Now, he watches the video the day of his deposition, and all of a sudden, now the hand is empty. But he doesn't just change that, he also changes about seeing the baggie, and why? Because if he doesn't change both of those elements, he has nothing. So it goes from an actual possession case, I grabbed his hand, we all agree, I'm sure that you grab his hand and you see it drop, that's actual possession. Now, we get into this constructive possession, and the district court, if you look and if this court looks at anything, 835 and 836 in the appendix, the district court lays it out and then completely minimizes the admissions by Wlodarski, and really acts as a fact finder and views, and maybe it was because there were cross motions for summary judgment, but really views the evidence in the light most favorable to the moving party, Wlodarski. But we're just looking, actually, not even just for probable cause, we're just looking for an arguable probable cause by the time you have the possibility of qualified immunity here. And I'll grant you, looking at that video, it's a confusing scene, there are a whole lot of people in there, but it does seem pretty clear that Wlodarski, whichever version you're looking at, his original statements, his testimony, connects this bag of cocaine to Mr. Lumar. He thinks that's what he's seen, and even if it's on the edge of probable cause, that's probably enough for qualified immunity, and once he's connected that bag of cocaine to Lumar, Lumar gets sent back to the police station. I don't think we ever even get to, respectfully, we don't get to qualified immunity, because these were material falsehoods. Well, were they falsehoods or just innocuous failures to remember exactly the sequence? It winds up being associated with Lumar, one way or the other. That day, his story, and if we were his supervisor, and you heard, oh, I grabbed his hand and he dropped it, boom. There's no question. Actual, good, he goes back, fine. But we have this whole, it throws the entire, and the words are what detained him, and those words turned out to be false, and at the very least, there is a question of fact of what he could find that he lied about that whole thing, about where he saw the bag, about where, seeing him pick it up, did he see him attempt to pick it up? The first story, there was nothing about seeing him pick it up. So at the very least, there's, this is a question for a jury, and I would ask to reserve the rest of my time. Mm-hmm. Certainly, counsel. Mr. Moretz. My name is Ethan Merrill, and I represent the city, so I'll only be addressing the claims against the city. My co-appellee will address the claims against Cook County. Elkhorn's case against the city is better understood as a challenge to the validity of a order entered by the chief judge of Cook County. That order is not a city policy. The judicial order requires those arrested on out-of-county warrants to appear in bond court. Elkhorn's argument is not only that the chief judge's order should be invalid, but that the city should have either ignored or challenged it, and thus the city is then liable for any action it took to simply abide by the chief judge's order. That is not how municipal liability under Section 1983 operates, which attaches only when a municipality's own independent policy, and not anything it merely devises or adopts under the compulsion of state law, is the moving force behind the alleged violation. So can you tell me what, I mean, I know we use this term moving force in some cases. What's the difference between something being the moving force for the city's actions and something just simply being, say, a but-for cause? I'm not sure if the court has really delineated the disturbance between those two. Moving force could relate more towards approximate causation, potentially, as opposed to but-for causation. It's a very vague and unsatisfactory term, because it sounds like the thing that pushed you to do it, or I'm just making up definitions, but I think we have one term too many in this test. And maybe more than one. Ultimately... There are some very thoughtful treatises by philosophers about the concept of causation, and the legal language overlaps with it only incidentally. So I will say, importantly here, the city's instructions to its officers could not have caused Lumar's purported injury, or been the moving force behind it, depending on how you want to frame it. Because the city never, had the city never issued the directive, then the chief judge's order still on its own would have required the city to bring Lumar to bond court. The only way that he wouldn't have been brought to bond court is if the city had directly defied the court's order, and because the city's directive therefore had no impact on whether Lumar was ultimately required to attend bond court, then it could not have been ultimately the cause of his overnight detention. Section 1983 is not intended to put local governments at war with state governments, which is essentially what Elkhorn advocates we do, that we challenge the chief judge's order. Whether or not the chief judge's order is ultimately in conflict with a statutory provision does not mean that it is suddenly the city's policy that it invented independently on its own. Elkhorn's Fourth Amendment claim separately fails. Suppose, suppose the legislature of Illinois passes a statute commanding the city of Chicago to do X, and the city of Chicago then does X, and gets sued for violating the Constitution. Any problem? Or are you going to say, well, we didn't choose to do X, we just did it because we were told? You know the history of, we're just following orders. Yes. But I would say in that scenario, they may have other viable claims available, even including their state law, but in 1983 municipal liability, it's only the city's policies and not the policy of federal and state law that governs whether liability attaches. You know, this court in Bethesda, Lutheran Homes. Can I just interrupt and say, you know, I'm troubled by the point that Judge Easterbrook is making as well, because in this instance it happens to be the city putting some more weight in the bones for the chief judge's order. It could be the city directly interpreting this state statute 5-109-2, but what's wrong with just saying, you know, this is an express policy, and defending on the merits? You know, somebody has to defend this policy on the merits, whether it's the state or whether it's Cook County or whether it's the city, maybe everybody has to. And the city is prepared to defend on the merits that this was simply a reasonable detention, but just on the topic of whose policy it was, which is a requirement of municipal liability in 1983, you know, this court in Bethesda, Lutheran Homes said, you know, our position is admittedly anonymous from the standpoint of conventional tort law, in which the obedience to a superior's orders is not a defense to liability. But this court went on to explain that in the 1983 context, when the municipality is detained in that state or federal law, rather than anything devised or adopted by the municipality that is responsible for the injury. So if Congress passes an unconstitutional statute, and tells, oh, the Secretary of the Treasury to do something, the Secretary of the Treasury can never be liable for following that statute, that the only right defendant would be Congress, or maybe the president for signing the law? I don't think that's a serious argument. Well, in that scenario, the issue would be to... For the entire history of the United States, the right defendant in a case like that has been the Secretary of the Treasury. In that scenario, the challenge would be to challenge the validity of the underlying law, which then would prevent, you know, once it's determined that it's constitutional, then obviously any actions taken thereafter... Well, and the aggrieved person, so let's assume there's somebody who has standing and so on, the aggrieved person sues the Secretary of the Treasury, the Secretary of the Treasury may say, I was acting on the basis of XYZ statute, and the Department of Justice would defend the constitutionality of the statute, but if they fail to persuade a court, then the plaintiff wins. And the interesting thing about this case is we have so many more cases that the point of this express policy language in Monell itself was to make it clear that there was no respondeat superior, you didn't go down and say you're responsible for the things the people underneath you did. Coming in the other direction, you know, saying that there's something above you that caused you to have this express policy is much less explored in the cases, we've got a gazillion cases on the downward direction, and it's not clear to me the reason why the city has the express policy is terribly pertinent. We have it because there's an Illinois statute, we have it because we cooperate with Cook County. I guess it doesn't really have to cooperate with Cook County, I'm not sure. But anyway, that all goes to the reason why there's an express policy, not whether there is one. And even if this policy does apply to the city, Elkhorn's Fourth Amendment claim separately fails because the detention was reasonable and no violation of the constitution occurred. Now if we step back and just look at what occurred here, the detention was only about 17 hours, there was no evidence that Loomer was held any longer than absolutely necessary to transfer him to bond court. So do you want to mention, I mean, I know your opponents challenged the applicability of the Riverside 48-hour window here. Right, so the 48-hour window, the exception that they raise applies only if the city was not intending to bring the arrestee to a bond court, but here the city was intending, and in fact, they actually did bring him.  For these reasons, the judgment should be affirmed. Mr. Powell. May it please the court. The question before this court as to the county defendants is whether Officer Waldarski had probable cause for Tyler Loomer's arrest when he saw Loomer reach for, hold, and then discard a baggie of drugs in Cook County Jail, where state law makes possession of drugs a criminal offense. The answer is that Officer Waldarski did have probable cause, and with that answer, plaintiff's claims related to any false arrest or wrongful death claim must fail. So let me ask you a Scott versus Harris type question. You know, you look at this video, and it's actually very confusing. I mean, it's kind of a chaotic room, and people are sort of rumbling around. It's not clear that Officer Waldarski did see Mr. Loomer, you know, actually reach down and get this bag. It's fleeting possession, if possession at all. Correct, Your Honor. You know, much like my hands, you can't see my hands behind the podium here. We don't actually see the possession take place. We don't see the baggie of drugs. The video is still consistent with all of Waldarski's testimony and with Waldarski's incident report. Waldarski was standing close by. He was well positioned to see it. He moved in. He secured Loomer's hand. He then reached down and found the baggie directly behind him. So while the video does not absolutely show everything that Waldarski testifies to, it is consistent, and as plaintiff repeatedly says in the briefing, Officer Waldarski is the sole eyewitness. Officer Waldarski's version of events stands uncontested. So why shouldn't that make us be more cautious when we see the change? I mean, Waldarski seems to be very upfront about it. He says, you know, I'm changing my account of what happened when he has his testimony later. And he very clearly says, I'm changing the sequence in which, you know, how are you changing your account? Changing the sequence. So shouldn't that undermine our confidence in what he had to say? No, because he still, there are other facts that he testifies to that do not change that are still validated by the video. The video doesn't change anything. The video doesn't show that he lied about anything. The video is again entirely consistent. And the initial incident report that Waldarski drafted did say that he saw Loomer reaching for something. Plaintiff hangs their hat on the fact that he's now saying that he saw it on the ground, he saw him pick it up. The incident report does say he saw him reaching for something. The only difference is that in the report, Waldarski says he grabbed his hand and then Loomer dropped it. Waldarski says, in fact, he grabbed his hand, the hand was already empty, but he had seen it down on the ground and then he went and got it. In either of those versions, again, as plaintiff admits, Loomer had picked up the drugs. Loomer was holding, was in actual possession of the drugs. So Waldarski's, you know, story is consistent in all versions. And in either version, he still had probable cause. So we don't need to know, in your view, whether Loomer had any idea that drugs were in that package? No, we don't. You know, I think plaintiff has been framing this case as Loomer's best defense in a criminal court. And that's simply the wrong posture. The question is not whether or not Loomer was actually in knowing possession of drugs. It's contraband regardless. It's contraband regardless. And the question is, from a reasonable officer's perspective, would he have reason to believe that Loomer was committing a crime? And not only contraband, the pictures were included in the summary judgment briefing in the record. It's a baggie of drugs. It's got little, you know, 12 little white rocks. It clearly looks like a baggie of drugs. And it is something that, again, Waldarski testified, Cook County Jail might not be the cleanest place. There's no reason for anyone to be reaching behind the bench to pick anything up. And so... I mean, do you take anything from the fact that Loomer, you know, maybe it's being passed down the line or something. Loomer takes possession of it and thinks, oh, blankety blank, you know, and just tries to get rid of it as fast as he can? And if, Your Honor, if we were on 26th Street, that would be a very good defense. Unfortunately, that's not where we are. And from Waldarski's point of view, he would have seen a detainee in Cook County Jail holding a baggie of drugs and then throw it away. And again, as cited in the brief, there's case law that discarding contraband is actually evidence of knowing possession. You can't possess it, right? It's like child pornography. You can't have it. Correct. And by trying to throw it away, that's actually evidence that you knew you were doing something that you shouldn't have been doing. And so, again, possession can be actual or constructive, exclusive or joint, fleeting possession is still possession, attempts to discard evidence are evidence of knowing possession. You know, as to this issue of false evidence, we've discussed this a little bit earlier. The plaintiff ignores the fact that probable cause was based on Waldarski's actual observations, which the video evidence supports, and not on the incident report written after the fact. And moreover, as the district court found, at worst, any error in the incident report was a mistake to sequencing and did not defeat the fundamental truths that Waldarski saw Lumar acting suspiciously, saw Lumar reach for, pick up, hold, and then try to abandon a baggie of drugs, all of which plaintiff concedes. While probable cause requires more than a mere hunch, it does not require proof beyond a reasonable doubt, and it's not even a more likely true than not standard. Officer Waldarski had probable cause for Lumar's arrest based on his own observations. Second, as to plaintiff's wrongful death claim, as already noted, Officer Waldarski did nothing wrongful, so plaintiff's claim fails. Further, in the case at Bart, Lumar's act of suicide breaks the causal chain as a matter of law, meaning that defendants cannot be held liable for Lumar's death. While plaintiff has pointed to a handful of cases that note a theoretical exception to the rule that suicide bars a wrongful death claim, such as when a physical blow renders someone incapable of understanding the consequences of their actions, plaintiff has failed to show the circumstances of Lumar's case are anything like those theoretical exceptions. Plaintiff's wrongful death claim also fails. If there are no further questions, we ask that this court affirm the judgment of the district court. Thank you. Thank you, counsel. Anything further, Mr. Peckins? Thank you. First, the city admitted that this was their express policy. They admitted it in their answer. The sergeant at the desk deciding whether to let him go said before this policy he would have been let go. The sergeant was not acting on the general order. By the way, I want to say this. The general order, it didn't pertain to Lumar. There was no order from a court that said hold Tyler Lumar. We would have a completely different case. We would have collateral bar doctrine issue. They never raised that. The genesis of the fourth amendment was the objection to general warrants of search and seizure. This general order, the city took and made it their own. They adopted it. I think that the court runs a risk of running into the holy and own versus independence. Multiple, and Owen talks about it, multiple actors, government actors may combine to cause a constitutional violation. There's no defense. The city has no defense. Finally, the video showed enough for Wigdarski to change his story. I'm out of time. Thank you, counsel. Thank you. The case is taken under advisement.